DAVID D. LIN (DL-3666)
JUSTIN MERCER (JM-4514)
**LEWIS & LIN, LLC**
45 Main Street, Suite 608
Brooklyn, NY  11201
David@iLawco.com
Justin@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiff*
ASHCAN STUDIO OF ART INC.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHCAN STUDIO OF ART INC., *Plaintiff*, v. JING DING a/k/a JANE DING and OOGIE ART LONG ISLAND INC. d/b/a ART PORTFOLIO CENTER a/k/a JANE DING ART SCHOOL, *Defendants*. | Case No: 18-cv-2079 **COMPLAINT** |

Plaintiff Ashcan Studio of Art Inc. ("Ashcan" or "Plaintiff") by its attorneys Lewis & Lin LLC, for their complaint against Defendant Jing Ding a/k/a Jane Ding ("Ding") and Oogie Art Long Island Inc. d/b/a Art Portfolio Center a/k/a Jane Ding Art School ("Art Portfolio Center" and collectively with Ding, "Defendants"), alleges as follows:

**STATEMENT OF CASE**

1. Plaintiff Ashcan brings this action pursuant to the federal Lanham Act and common law for unfair competition, tortious interference, and for the malicious, willful and unlawful publication in this District of false, misleading, disparaging and defamatory statements

1

by Defendants regarding Plaintiff Ashcan.

2. Plaintiff Ashcan owns and operates a renown and highly-regarded art school in midtown Manhattan, Flushing and Little Neck, Queens. Ashcan's art education programs includes assisting students in creating art portfolios for submission to college and university art programs.

3. Defendants own and operates a competing art school and portfolio preparation program called "Art Portfolio Center."

4. Defendants used a popular WeChat platform to perpetrate an attack campaign against Ashcan by publishing and communicating false, defamatory and completely fabricated statements while promoting their competing art school.

5. Specifically, in or around mid-March 2018 to the present, via public comments to third parties, via Defendants' WeChat account (published to over 1000 WeChat group members and via email and social media, and accessible across the Internet), Defendants accused Ashcan of helping its students to "cheat" and engaging in "improper" and "fraudulent practices" in its art education programs—while touting the virtues of their competing art program.

6. Thus, Defendants have a direct financial interest in driving customers and sales to Art Portfolio Center and away from Ashcan.

7. Defendants' fallacious WeChat posts remain active and, upon information and belief, are viewed by thousands of visitors each day, and Defendants continue to defame and injure Plaintiff with same. Defendants' false accusations threaten to destroy Plaintiff's entire reputation. As a result of Defendants' misconduct, Plaintiff has been and continues to be substantially and irreparably harmed.

## PARTIES

8.      Plaintiff Ashcan is a New York corporation with a principal office and place of business at 45 East 34th Street, 4th Floor, New York, NY 10016.

9.      Upon information and belief, Defendant Jing Ding a/k/a Jane Ding is an individual and is residing and domiciled in New York at 200 S. Middle Neck Road, Suite 3, Great Neck, NY 11021.  Ding uses aliases, including but not limited to, Jane Ding.

10.     Upon information and belief, Defendant Art Portfolio Center (together with Ding, "Defendants") is a New York corporation with a registered office at c/o Jing Ding, 200 S. Middle Neck Road, Suite 3, Great Neck, NY 11021 and place of business at 10 Grace Avenue, Suite 2, Great Neck, NY 11021. Defendants maintain the active WeChat account "@Jane Ding 美术作品集创作中心" (Translation: "Jane Ding Art Portfolio Center"). "Art Portfolio Center" maintains the Internet website <www.artportfoliocenter.com> and lists "10 Grace Avenue, Suite 2, Great Neck, NY 11021" as its address on the "Contact" page.

11.     Ding is an individual who owns, directs and/or controls Art Portfolio Center, and who has directed the wrongful conduct complained of herein.  Alternatively, upon further information belief, Ding operates an art school as a sole proprietorship doing business as "Art Portfolio Center."

12.     At all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venture of the other defendant, and the acts of each defendant were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of the other defendant; and each defendant aided and abetted the other defendant in the acts of omissions alleged in this Complaint.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. This Court has also subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

14. This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

15. This Court has personal jurisdiction over Defendant Ding because she is a resident of the State of New York.

16. The Court has personal jurisdiction over Defendant Art Portfolio Center because it is authorized to do business in the State of New York and maintains its principal office within this judicial district.

17. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), since some, or all, of the conduct that is the subject of this action occurred in this district.

## BACKGROUND COMMON TO ALL CLAIMS

18. Founded in 2006, Plaintiff Ashcan is a renowned art education institution with locations in midtown Manhattan, Flushing and Little Neck, geared toward the creative development of artistic skills in youth and art portfolio preparation. Ashcan offers the highest quality art education to a diverse student body.

19. Ashcan's name derives from "The Ashcan School," an artistic movement/collective in the United States during the early 20th century that was best known for

works of art portraying daily urban life, especially within New York City.

20. In that same spirit, the learning process at Ashcan Studio begins with developing observational drawing, painting and sculptural techniques, then moves to the conceptual development of their projects, encouraging critical thinking and the individual student's creativity. Thus, Ashcan's curriculum is an individualized, tuition-based program in which each student's personal interests and skills are the focus.

21. Ashcan's faculty includes artists and educators, all of whom have bachelors and/or master's degrees in Fine Arts, Visual Arts and/or Design. Ashcan's faculty offers a breadth and depth of knowledge and experience in Drawing, Painting, Portfolio, and Visual Art Studio. Ashcan's faculty is committed to cultivating within its students the intellectual curiosity needed to explore the creative process, embrace new challenges, and pursue intellectual and aesthetic excellence.

22. Ashcan has established an excellent reputation at colleges and universities for the preeminence of portfolios submitted to them by Ashcan's students. Ashcan's students have been accepted to major visual arts schools in the U.S and the U.K and have been offered extraordinary amounts of merit-based scholarships. Each year, the outstanding work of Ashcan's students is acknowledged by many of the world's greatest educational institutions.

23. Insofar as Ashcan has established a stellar reputation nationally and globally, it also has a strong following locally—especially with students of color. Ashcan's studios are conveniently located in predominantly ethnic Korean and Chinese enclaves in Manhattan and Queens.

24. As a result of Ashcan's reputation in art education, it has established partnerships with some of the best art schools, art foundations and art museums in the world, including but

not limited to, The School of Visual Arts in New York City, The School of the Museum of Fine Arts at Tufts, The Arts University College at Bournemouth, the Joan Mitchell Foundation, Bramson Ort College, P.S. 98Q – The Douglaston School, CUE Art Foundation, and the Alliance for Young Artists & Writers.

### Defendants and their Wrongful Conduct

25. Defendant Art Portfolio Center is a competing art school controlled and dominated by is single owner, Ding.

26. Beginning in or around mid-March 2018 and continuing to the present, in an intentional effort to divert business away from Plaintiff and toward Defendants, and to cause injury to Plaintiff, Defendants began to contact Plaintiff's current and potential customers in an effort to dissuade Plaintiff's current customers from continuing to do business with Plaintiff and its potential customers from enrolling at Plaintiff's art school.

27. In particular, Defendants have posted taunting material and defamatory statements about Plaintiff and Plaintiff's art education services on social media outlets across the Internet—including via their branded WeChat account "@JaneDing [Art Portfolio Center]".

28. Defendants' statements are false and were and are intended to specifically target the local Chinese and Korean communities where Ashcan has established a solid reputation and where Defendants compete. Defendants made these false statements—in Chinese— in at least two public, WeChat groups of over 500 and 400 members respectively, entitled "Great Neck Education," comprised of parents, administrators and others concerned about, *inter alia*, the topic of scholastic education in and around Great Neck, NY (a community where the largest minority group is of Asian descent—at around 13%—and adjacent to Little Neck, Queens, with over 40%) and businesses, like Plaintiff Ashcan, that cater to those populations. Upon information

and belief, most, if not all, of the nearly 1000 members of the "Great Neck Education" WeChat group are Chinese.

29. Specifically, Defendants have attempted to attack the reputation of Ashcan to undermine Ashcan's professional and academic honesty and credibility as one of the leading art schools by falsely claiming and directly endorsing others' false statements claiming that "Ashcan has a serious problem of assisting students with cheating."

30. On or about March 15, 2018, Defendants wrote in the public "Great Neck Education" WeChat group defaming and making false statements of fact about Plaintiff, while promoting their own competing art school (the "March 15th Post") (an original Chinese language and English language translation of the March 15th Post is annexed hereto as **Exhibit A**), in relevant part as follows:

Original:

> JaneDing art school: 前几天我女儿在学校里的作品被Great Neck South 选去 Tills center gallery 展出. 学校的 Art department chair 说 Ashcan 帮助学生作弊严重. 在自己的高中里面画的画能得奖 才是真正学到本事了. 我们今年的学生全部被申请的顶尖 学校录取而且有奖学金.Lucy Lu 女儿在高中里的作品和我女儿在高中里的作品 都有得Scholastic award. 只是这一幅全国金奖是在我们这里做的。 Lucy 女儿 从 Ashcan转来我们学校是有原因的.😁 现在越来越多的学生 转过我们学校来。 我为自己给学生提供的教育感到骄傲

Translation:

JaneDing art school: A few days ago, my daughter's work at school was chosen by Great Neck South to be on display at Tills Center Gallery. **The school's Art Department Chair said Ashcan has a serious problem of assisting students with cheating**. Only when your drawing done at your own high school wins a prize can you say you have really learned the skill. Our students this year have all been accepted by top colleges they have applied for and they have got scholarships. The work of Lucy Lu's

7

> daughter at high school and my daughter's work at high school both got the Scholastic Award. Only this one winning the national gold prize was done here at our place. **There was a reason why Lucy's daughter was transferred from Ashcan to our school. 😁 More and more students are now transferring to our school. I feel proud of myself for the education I provide to students**.

*See* Exhibit A (emphasis added).

31. The above statements are knowingly and materially false, and were made to defame Plaintiff.

32. Defendants made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiff Ashcan. Moreover, Group members and viewers understood Ding's references to "our school" to mean Defendant Art Portfolio Center.

33. Specifically, the student mentioned in the above March 15th Post still attends Ashcan—thus, Defendants' claim that she "transferred from Ashcan" is demonstrably false.

34. Furthermore, because of Defendants' stature in the community and their reference to an accusation about Ashcan allegedly made by the art director at Great Neck South High School, group members understood the above statements to be factual.

35. After receiving dozens of inquiries and messages concerning Defendants' false statements in the March 15th Post, Plaintiff inquired with the art chairperson at Great Neck South High School concerning the accusations in the post and she confirmed that she never said that Ashcan helps it students to "cheat."

36. Upon further information and belief, from March 2018 to the present, Defendants have communicated these same false and defamatory statements to other individuals, via email, social media, orally and elsewhere in writing.

37. Upon information and belief, hundreds, if not thousands, of people viewed the

March 15th Post, which has a significant influence on viewers' perception of Plaintiff.

38. Upon information and belief, numerous other potential and prospective customers refused to attend and/or start doing business with Ashcan after viewing Defendants' March 15th Post.

39. Apparently not satisfied that her attack campaign against Plaintiff was having the immediate desired effect, Defendants continued making false statements concerning Plaintiff and Plaintiff's art education services.

40. On or about March 21, 2018, in the same public "Great Neck Education" WeChat group, Defendants further defamed and made false statements of fact about Plaintiff, while promoting their own competing art school (the "March 21st Post") (an original Chinese language and English language translation of the March 21st Post is annexed hereto as **Exhibit B**), in relevant part as follows:

Original:



Translation:

JaneDing [Art Portfolio Center]: I am not just bragging [smiley face]

JaneDing [Art Portfolio Center]: I'm stirring up a movement for cracking down on **fraud in fine art education**. I have already

> called the admission offices of several top academies of fine arts and asked them to do a random test of newly accepted students right on the spot. Scholastic[™] will also receive my letter.

*See* Exhibit B (emphasis added).

41. The above statements are knowingly and materially false, and were made to defame Plaintiff. They have been published by Defendants on their WeChat account in the public Chinese-language group of parents in Great Neck for the overt purposes of (i) destroying the reputation and business of Plaintiff by misleading the public to believe that Plaintiff can and does commit "fraud in fine art education" by engaging in academic dishonesty and (ii) to convince consumers not to visit Ashcan's art school, and instead support Defendants' Art Portfolio Center.

42. Defendants made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiff Ashcan. Moreover, Group members and viewers understood Defendants references to "our school" to mean Art Portfolio Center.

43. Upon information and belief, Defendants posted the March 21st Post via their WeChat account, @JaneDing [Art Portfolio Center], to garner attention for and ultimately drive consumers to their competing art school they advertise under the name "Art Portfolio Center".

44. Upon information and belief, Defendants also repeated these false claims of "fraud" and "cheating" to various third parties via email and telephone.

45. By publishing the above Posts, Defendants acted with constitutional malice because they knew they were lying when they made these allegations about Plaintiff—indeed, the art director at Great Neck South High School denied ever saying Ashcan helps students to "cheat" as Defendants claimed. At a minimum, Defendants published those posts with reckless disregard as to whether the statements therein concerning Plaintiff were true or false.

46. When Defendants published the Posts above to the hundreds of Chinese parents who follow that WeChat group, they knew and/or reasonably anticipated that republication of the defamatory and disparaging statements contained therein by those followers and other media was the natural and probable consequence.

47. Indeed, Defendants actively seeks such attention in order to promote Ding's personal reputation and Art Portfolio Center's professional reputation in art education, and to garner attention for and ultimately drive consumers to their competing art school, "Art Portfolio Center."

48. The Posts have had their intended effect: on information and belief, hundreds of viewers and readers have been misled about Plaintiff and Plaintiff's services.

49. Plaintiff has received numerous inquiries about the truthfulness of the statements on the Posts. Many of these inquirers have expressed anger, frustration, confusion or dismay to Plaintiff based on the content of those Posts.

50. Upon information and belief, Defendants published the Posts for the sole purpose of harming Plaintiff's reputation and causing Plaintiff to lose revenue as the statements within bear directly on Plaintiff's services, professional capabilities, and business practices—all key aspects of Plaintiff's business and factors that any person considers before choosing to attend an art education institution—or any institution focused on education.

51. In particular, the statement that "Ashcan has a serious problem of assisting students with cheating" is and has been devastating to Plaintiff's reputation and business interests. No one wants to attend an institution known for cheating as it not only undermines the integrity of the institution, but the credibility of its students.

52. Defendants posted the Posts on two high-profile WeChat groups containing nearly

11

1000 parents of Chinese descent precisely because they knew that persons interested in the topics of art education in predominantly ethnic Korean and Chinese enclaves in Manhattan and Queens, like Plaintiff's own art school, review those WeChat group accounts regularly.

53. Thus, by continuing to promote Defendants' Art Portfolio Center in Defendants' misleading and false public statements regarding Plaintiff, Defendants intended to siphon visitors and customers away from Plaintiff's art school and towards their own.

54. Upon information and belief, Defendants knew that the Posts would stifle competition with and cause economic harm to Plaintiff by attempting to undermine Ashcan's reputation and the quality of its art education services, which is what its business is built on.

55. In short, when Defendants disparage Plaintiff, in the manner stated above, Plaintiff's reputation suffered, attendance at its art school could go down and fewer consumers may choose to attend Ashcan in the future.

56. Plaintiff continues to have contractual relationships with its students and attendees.

57. Defendants scripted and caused to be disseminated the above statements as part of an intentional, malicious and systematic campaign to interfere with Plaintiff's contractual relationships with its students and attendees, and upon information and belief, to wreak havoc on Plaintiff's business by inducing Plaintiff's current and prospective students and attendees to cease doing business with Plaintiff.

58. As a direct and proximate result of Defendants' defamatory conduct described herein, a number of Plaintiff's students and attendees have been confused, and refused to start and/or continue business with Ashcan.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE LANHAM ACT
## UNDER 15 U.S.C. § 1125(a)(1)(B)

59. Plaintiff realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth here.

60. Defendants' publication and direct endorsement of false and misleading statements about Plaintiff and its services, constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

61. Defendants' publication and direct endorsement of false and misleading statements about Plaintiff and its services, is likely to deceive people and consumers as to the nature and quality of Plaintiff and its services.

62. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered irreparable damage to its reputations and will continue to suffer significant and irreparable reputational injury to Plaintiff's art school, in addition to significant monetary damages in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
## SLANDER, LIBEL *PER SE*, AND COMMERICAL DISPARAGEMENT

63. Plaintiff realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth here.

64. Defendants have intentionally made knowingly false statements of fact about Plaintiff and its services in the Posts.

65. Additionally, and/or alternatively, Defendants have espoused and/or concurred in the charges made by others to launch an unwarranted (and personal) attack of their own against Plaintiff and upon Plaintiff's standing in the community.

66. These statements were made maliciously and willfully, and were intended to

13

cause harm to Plaintiff's business integrity and reputation.

67. The aforementioned statements were false when made and Defendant Ding knew or should have known that the statements were false when made.

68. The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiff Ashcan.

69. The aforementioned statements where made of and concerning Plaintiff, and were so understood by those who read Defendants' publication of them.

70. Among other statements, on Defendants' WeChat account, published to hundreds of people online, via email and social media, and accessible across the Internet, Defendants accused Plaintiff of having "a serious problem of assisting students with cheating." Similarly, Defemdant published statements that Plaintiff engaged in "fraud in fine art education."

71. These statements were false, and were published to third parties in this district and across the Internet.

72. Defendants have no privilege to assert the false and disparaging statements.

73. Defendants asserted the above statements with actual malice, in that through Ding's personal and Art Portfolio Center's professional relationship with the art director at Great Neck South High School as stated above, they knew that the above statements were false. Alternatively, Defendants' statements were published with reckless disregard for the truth or falsity of same, and were made to solely to injure Plaintiff.

74. As a result of Defendants' acts, Plaintiff has suffered irreparable damage to its reputation and further damages in an amount to be determined at trial.

75. As a result of the willful and malicious nature of the defamation, Plaintiff is

14

entitled to punitive damages.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION – FALSE DESCRIPTION

76. Plaintiff realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth here.

77. Defendants authored and/or are using the Posts to divert users searching for Plaintiff Ashcan to Defendants' competing business and services.

78. As set forth above, Defendants posted and widely-disseminated false, misleading and defamatory statements and represents about Plaintiff online concerning the nature, characteristics or quality of Plaintiff's services.

79. The false and misleading representations set forth above were made in the scope of commerce and in the context of promoting Defendants' competing art school.

80. Upon information and belief, Defendants posted the Posts on two high-profile WeChat groups containing nearly 1000 parents of Chinese descent precisely because they knew that persons interested in the topics of art education in predominantly ethnic Korean and Chinese enclaves in Manhattan and Queens, like Plaintiff's own art school, review those WeChat group accounts regularly and that such a false statements would harm Plaintiff's reputation and business in this district and elsewhere.

81. Upon information and belief, by posting the misleading Posts with the phrase "Ashcan" therein, Defendants intended to use these defamatory and false statements as a means to generate business by turning students and interest away from Plaintiff and its art school, and redirecting them to Defendants' competing art school, Art Portfolio Center.

82. Moreover, Defendants actions did harm Plaintiff and made Plaintiff believe that that it would be damaged by Defendants' misrepresentations.

83. Considering Defendants knew that their statements concerning Ashcan were false and/or, at best, misleading, Defendants had no justification to assert the misrepresentations other than to harm Plaintiff's business by exploiting the earned reputation of Ashcan.

84. These acts and others stated above constitute a pattern of common law unfair competition by, *inter alia*, false description, entitling Plaintiff to recovery of compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE CONTRACTUAL RELATIONS**

85. Plaintiff realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth here.

86. Plaintiff had existing contracts with its students and attendees and reasonably expected that its contractual relationships with its students and attendees would continue into the future.

87. Defendants knew of Plaintiff's contracts with its various students and attendees. Indeed, Defendants were aware of Plaintiff's contracts as they claimed that various former Ashcan students and attendees now attended their art school, Art Portfolio Center.

88. By the wrongful conduct described above, Defendants intentionally and improperly interfered with Plaintiff's contracts with its students and attendees and did so with the intent and purpose of damaging Plaintiff's business and reputation.

89. Defendant's interference caused Plaintiff's students and attendees confusion and to cease doing business with Plaintiff.

90. Potentially hundreds of more prospective students and attendees will never inquire with Plaintiff due to the Posts—which was Defendants' precise intention.

91. As a result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

92. Plaintiff has also suffered and will continue to suffer irreparable harm in the form of damage to its reputation as a result of Defendants' conduct described herein.

93. While an award of damages may be adequate to compensate Plaintiff for the loss of students and attendees, an award of damages will not be adequate to compensate Plaintiff for the damage to its reputation caused by Defendants. Plaintiff has suffered and will continue to suffer irreparable harm unless preliminary and permanent injunctive relief is granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants awarding Plaintiff:

1. Enter a judgment declaring that Defendants' conduct violates 15 U.S.C. §1125(a);

2. Enter a judgment declaring that Defendants' conduct constitutes slander, libel and/or commercial disparagement;

3. Enter a judgment declaring that Defendants' conduct constitutes unfair competition;

4. Enter a judgment declaring that Defendants' conduct constitutes tortious interference;

5. Award Plaintiff compensatory damages according to proof at trial but in an amount not less than $2,000,000.00;

6. Award Plaintiff punitive damages pursuant to the Lanham Act and the common law, due to Defendants' willful and wanton behavior;

7. Enter a temporary and permanent order, enjoining Defendants from publishing the false advertising statements identified above in relation to Plaintiff, or any false statements similar thereto, and directing Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such posts;

8. Enter a temporary and permanent order, enjoining Defendants from publishing the statements constituting libel and/or commercial disparagement identified above in relation to Plaintiff, or any false statements similar thereto, and directing Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such posts;

9. Award Plaintiff reasonable attorney's fees, costs and disbursements in this civil action; and

10. Enter such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated: Brooklyn, New York
April 6, 2018

        LEWIS & LIN, LLC

        By: */s/ David D. Lin*
           David D. Lin, Esq. (DL-3666)
           Justin Mercer, Esq. (JM-4514)
        45 Main Street, Suite 608
        Brooklyn, NY 11201
        Tel: (718) 243-9323
        Email: david@iLawco.com
              justin@iLawco.com

        *Counsel for Plaintiff Ashcan Studio of Art, Inc.*

## EXHIBIT LIST

**Exhibit A** – March 15th Post (Chinese Original and English Translation)

**Exhibit B** – March 21st Post (Chinese Original and English Translation)